The State of Ohio, Appellee, *v.* Dimacchia, Appellant.

(No. 594—Decided April 6, 1962.)

*Mr. Gerald Lorig,* prosecuting attorney, for appellee.
*Mr. Fred Booth,* for appellant.

CRAWFORD, P. J. Defendant, appellant herein, was convicted in the Municipal Court of Springfield on a charge that he unlawfully engaged in common labor on Sunday.

The principal facts are not disputed. On Sunday, September 10, 1961, the Ontario Store of Springfield, Ohio, was open for business. Ernest Ostreicher, the manager, was present and in charge of the store until sometime in the afternoon. When he left, defendant took charge as acting manager.

A little while later William Cutlip of Springfield, then in the employ of the Retail Merchants, and Mrs. Beatrice Smith of Columbus, in the employ of Pinkerton's, entered the store and purchased a furnace filter, a jar of paste, a can of Prestone anti-freeze, and a roll of wax paper.

They then asked for the manager. The defendant came forward and said he was the person in charge. Cutlip asked to purchase tires for his Renault Dauphine. Defendant answered that he could not do so, as the store did not carry them.

On September 18, 1961, William Cutlip signed an affidavit in the Municipal Court of Springfield charging "That on or about the 10th day of September A.D., 1961, in the county of Clark, and state of Ohio, one John Dimacchia did unlawfully engage in common labor, or suffered or permitted a building or other place to be open for business on Sunday, to wit: Ontario Store at Route 40 east, Springfield, Ohio, contrary to Section 3773.24 Revised Code of the state of Ohio."

Upon motion of defendant the court required the state to

elect between the charges contained in the affidavit. It elected to proceed on the charge of engaging in common labor.

Defendant demanded a trial by jury, which was denied.

Defendant makes five assignments of error. Assignments 1 and 2 challenge the validity and constitutionality of the statute, Section 3773.24, Revised Code. This court has heretofore decided in *State* v. *Carney*, 113 Ohio App., 280, that it is bound to hold the statute valid and constitutional following the weight of authority and the decision of the Supreme Court in *State* v. *Kidd*, 167 Ohio St., 521.

Assignment of error No. 3 is the refusal of the trial court to grant a trial by jury. Defendant claims he was entitled to a jury under Section 2945.17, Revised Code, because the affidavit does not specify whether a first or a subsequent offense is being charged and the penalty for a subsequent offense may exceed $50. He cites Section 3773.99, Revised Code, which states the penalties for violations of Section 3773.24, Revised Code. Paragraph (P) thereof provides:

"Whoever violates Section 3773.24 of the Revised Code shall be fined twenty-five dollars for a first offense; for each subsequent offense such person shall be fined not less than fifty nor more than one hundred dollars and imprisoned not less than five nor more than thirty days."

In order to subject the accused to the greater penalty it would be necessary that the affidavit aver that the offense charged is a second or subsequent offense. 28 Ohio Jurisprudence (2d), 447, Indictment and Information, Section 39; *Carey* v. *State*, 70 Ohio St., 121.

Assignment of error No. 4 is that "the court erred by refusing the defendant the right to introduce evidence to show that the items purchased were either necessaries, a charity or one of those items which fall within the exceptions to the Revised Code, Section 3773.24."

Defendant refers particularly to the record where he had called William Cutlip, the complaining witness, for direct examination, and the following testimony appears:

"Q. Approximately what time of the year do you start conditioning your furnace for the winter?

"Mr. Lorig: I'll object to the relevancy.

"The Court: Sustained.

"Q. Is it necessary to have a filter in your furnace to sufficiently operate that furnace or have it in top condition?

"Mr. Lorig: Objection.

"The Court: Sustained.

"Mr. Booth: If the court please, I feel that these questions are appropriate in regards to the necessity—

"The Court: (Interposing) The charge is 'engaging in common labor.'

"Mr. Booth: Am I correct that the court's ruling is that when you are charged with common labor the exceptions to the statute do not apply

"The Court: I'm saying that in this case, these items and what they were used for, there's no relevancy to this particular case.

"(Witness excused.)

"Mr. Booth: I'd like the record to show my objection to the ruling. I have no further questions * * *.''

When the witness, Cutlip, testified in the state's case he was cross-examined as to the purpose of purchasing and the use of the merchandise. Defendant then cross-examined both Cutlip and Mrs. Smith as to their respective employment, the capacities in which they acted, and the manner and purpose of selecting and purchasing the items of merchandise. No one could doubt from reading the record that these two witnesses were acting throughout solely as law enforcement agents engaged in the preparation of evidence.

It is quite probable that the court had these obvious facts in mind when he gave the above answer to counsel's question confining it as he did to "this particular case."

In view of these facts it was especially important, if the ruling was to be questioned on appeal, that the answers to the questions which were excluded should have been proffered. 3 Ohio Jurisprudence (2d), 76 and 77, Appellate Review, Section 212. Without the proffer of answers at variance with the rest of the evidence, we perceive no prejudice to the defendant in this respect.

Assignment of error No. 5 reads: "The court erred by failing to sustain a motion to dismiss because the prosecution

had not sustained the burden of proof and the ruling, therefore, was contrary to law.''

The point relied upon here is that what defendant did on the Sunday in question could not be classified as ''common labor'' within the provisions of the statute. The evidence is that he was supervising the store as acting manager in the absence of the manager himself. Defendant testified as follows:

''Q. In your own words would you explain to us the type of work which you did that particular day- A. I supervised, I made sure that everybody was keeping busy, made sure we had plenty of merchandise on the floor, but I didn't put any of it out myself.

''Q. In what capacity were you operating? A. I was acting manager.''

Defendant did not open the store that day but closed it in the evening; he went to the bank to place ''Saturday's deposit'' in the night deposit box; and he talked with William Cutlip for approximately two minutes regarding the latter's request to purchase tires.

In construing the language of the statute, the words used must be given their usual and ordinary meaning. The term ''common labor'' is generally understood to mean unskilled labor. See Webster's Third New International Dictionary and Casselman's Labor Dictionary. If we pursue the varied definitions of the separate words ''common'' and ''labor'' we encounter a wide variety of meanings. But when the two words are combined into one expression they have the special and distinct meaning just stated.

This simple rule of construction must, of course, yield to any different interpretation by the Supreme Court. With respect to Sunday closing laws there has been a tendency in some other jurisdictions to give extraordinary definitions to the term.

In the early case of the *City of Cincinnati* v. *Rice,* 15 Ohio, 225, the court was construing a loosely worded ordinance. This ordinance forbade, among other things, ''trading, bartering or selling, or buying any goods, wares, or merchandise, or * * * common labor'' on Sunday, and then continued, ''Provided, nothing contained in Section 1 of this ordinance, in relation to common labor, shall be construed to extend to those who conscientiously do observe the seventh day of the week as the Sab-

bath." The defendant did so observe the seventh day of the week, but was charged nevertheless with selling goods on Sunday.

The absurdity of permitting one to engage in common labor but forbidding him to sell goods is apparent. To avoid so curious a conclusion the court held that inasmuch as the state statutes forbade common labor without specifying "trading, bartering or selling, or buying any goods * * *," the term "common labor" as there used must include "trading, etc.," and that therefore the term must be similarily construed in the exception clause of the ordinance.

The force of this construction as a precedent in our present case is weakened for a number of reasons:

(1) Giving an enlarged construction to the term "common labor" when used in the exception, actually resulted in a strict construction of the ordinance; in other words, a liberal construction of the statute was employed to achieve a strict construction of the ordinance.

(2) The present form of the statute now prohibits, in addition to common labor, other Sunday activities which are broad enough to cover trade, etc., so there is no longer the need or reason for expanding the meaning of common labor that existed in the *Rice case.*

(3) Subsequent decisions have reduced rather than increased the meaning of the term. The case of *Sellers* v. *Dugan,* 18 Ohio, 489, which by holding it was illegal to sell four hundred bushels of corn on Sunday at first tended to broaden the activities prohibited, was overruled by *Bloom* v. *Richards,* 2 Ohio St., 387. This latter case recognized the legality of a contract for the sale of real estate entered into on Sunday, and therefore tended to restrict the statute, although the court still expressed the view that merchandising is the common labor of a merchant. A similar tendency to apply a more strict construction is expressed in *Hastings* v. *Columbus,* 42 Ohio St., 585. The question of common labor was not involved in the later cases of *State* v. *Kidd, supra* (167 Ohio St., 521), and *City of Akron* v. *Klein,* 171 Ohio St., 207.

It is impossible to review the decisions, particularly those of some other states, without perceiving the difficulty encountered by many legislatures and courts, especially in earlier times,

of rationalizing as an exercise of police power what had been begun as the consecration of the Christian Sabbath by Parliament, acting under the sanction of the Church of England. Only by attempting so to construe our statutes could it be hoped to reconcile them with our constitutional safeguards of freedom in religion. The difficulty of this task has tended to lead to strained constructions and to put upon the term "common labor on Sunday" an interpretation which it was obviously hoped would make it serve as a valid and constitutional substitute for the historic English term "worldly labor upon the Lord's day."

We must never lose sight of the cardinal principle that a penal statute must be strictly construed. As expressed in *Bloom v. Richards, supra* (2 Ohio St., 387), at page 404, "The law in question is a penal statute, and is therefore to be construed strictly. Such statutes are not to be extended by construction."

The combination of charges contained in the original affidavit in this case which resulted in the requirement of election, may suggest some uncertainty on the part of the state as to how properly to classify what the defendant did.

Unless and until the Supreme Court should decide and clearly state that the term "common labor" was meant to include such activities as those engaged in by this defendant, we must decline thus to expand the meaning of the statute.

The evidence presented in this case is not sufficient, therefore, to sustain the burden of proving the particular charge against this defendant by the requisite degree of proof.

Assignments of error Nos. 1, 2, 3 and 4 are not well taken; assignment of error No. 5 is. For that reason the judgment will be reversed.

*Judgment reversed.*

KERNS and SHERER, JJ., concur.