THE STATE OF OHIO, APPELLEE, *v.* RIVERS, APPELLANT.

[Cite as State v. Rivers (1977), 50 Ohio App. 2d 129.]

(No. 35402—Decided January 13, 1977.)

*Mr. John T. Corrigan,* for appellee.
*Mr. Ford L. Noble,* for appellant.

DAY, P. J. Defendant-appellant, John C. Rivers (defendant), was indicted on May 29, 1975, for involuntary manslaughter, in violation of R. C. 2903.04. He was found guilty of committing the crime charged during the commission of an aggravated assault, by jury verdict on October 10, 1975. He filed this appeal October 14, 1975.

Testimony at trial was conclusive that it was defendant's shot which fatally wounded one Walter Willis at the Square Bar in Cleveland, Ohio, on May 18, 1975. Defendant claimed, however, that the shooting was an accident.

Defendant was part owner of the Square Bar; decedent Walter Willis was also a part owner. Defendant had, by his own testimony, argued with Bernard Bailey over defendant's refusal to serve Bailey a drink after hours. As decedent Walter Willis was escorting Bailey out the door, Bailey turned around to shout obscenities at defendant. Defendant testified that he pulled a gun, "[n]ot to shoot him or anything, merely to scare him that he would go out the door." Defendant claimed that the gun went off by accident. Walter Willis, who was still next to Bailey at the door, fell, mortally wounded.

Several witnesses testified that defendant had threatened to kill Bailey. Defendant denied it, and Bailey himself did not confirm it. Several prosecution witnesses testified that defendant shot with the gun pointed straight ahead toward the door. Defendant claimed he was not aiming at anyone or at the door. Defense witness Larry Simmons testified that defendant was pointing the gun in the air.

Deputy Coroner Dr. Lester Adelson testified that the shot which killed Willis entered his back and took a downward path of twenty-five to thirty-five degrees. The downward slope could be explained, he testified, by deflection when the bullet hit bone or soft tissue.

Defendant assigns five errors.

## I.

*Assignment of Error No. 1:*

"The court erred in preventing the defendant-appellant from questioning the reputation of a state's witness for truth and veracity in the community."

Having established that defense witness Bessie Mayfield was a barmaid at the Square Bar, where State's witness Bernard Bailey had been a regular customer, defense counsel asked Ms. Mayfield:

"Do you have the means of knowing what kind of character or reputation Bernard Bailey has?"

The prosecutor's objection to the question was sustained. An off-the-record sidebar discussion followed. Defense counsel did not pursue the line of questioning.

The objection was improperly sustained. The defendant in a criminal case has the right to impeach state witnesses by proof of their bad reputation for truth and veracity, *State* v. *Agner* (1972), 30 Ohio App. 2d 96, 103. The question posed by defense counsel to Ms. Mayfield is an acceptable preliminary to establishing a foundation for impeachment testimony, *Craig* v. *State* (1854), 5 Ohio St. 605, 607; McCormick, *Evidence* (2d Ed., 1972) at 90.[1]

Defense counsel, however, fails to demonstrate the prejudicial effect of this error, because he made no proffer of the answer. As this court stated in *Pokorny* v. *Local 310* (1973), 35 Ohio App. 2d 178, 184-185, revd. on other grounds, 38 Ohio St. 2d 177:

"When a court sustains objections to a question a statement must be made or proffered as to what the expected answer would be in order that a reviewing court can determine whether or not the action of the trial court is prejudicial; and in the absence of a proffer, the exclusion

---

[1] It is true that the scope of inquiry to impeach a witness does not extend to a perusal of that witness's general reputation, but is limited to an examination of his or her reputation for truth and veracity, *Craig* v. *State, supra.* A question as to the impeaching witness's means of knowing the general reputation is proper nonetheless as a prelude to asking about the reputation for truth and veracity specifically, *Phillips* v. *Kingfield* (1841), 19 Me. 375, 381.

of evidence may not be assigned as error. *Smith* v. *Rhodes and Wilt* (1903), 68 Ohio St. 500; *State* v. *Dimacchia* (1962), 116 Ohio App. 319; *Ohio Cas. Ins. Co.* v. *Landon* (1961), 1 Ohio App. 2d 317; *Pacic* v. *Century Food Markets* (1953), 68 Ohio Law Abs. 15. Also see, *Uniform Rules of Evidence*, Rule 5.''

Defendant's first assignment of error is without merit.

## II.

*Assignment of Error No. 2:*

''The court erred in allowing, over the objection of the defendant as to relevancy and materiality of the question, the prosecution to cross-examine the defendant's expert witness on a collateral subject that was never introduced by the defendant in his direct examination.''

Engineer Thomas Neff testified for the defense. On direct examination, he described surveying work he had done at the Square Bar. He also described, using the theory of vectors, the likely deflection of a traveling missile upon hitting a solid object.

On cross-examination, the prosecutor, over defendant's objection, asked this witness about tests his firm had made upon an air grate at the Square Bar. The tests, to determine whether a bullet had ricocheted off the grate, Neff testified had proven negative.

Defendant maintains that the trial court erred in two respects when it allowed the prosecutor to develop this testimony. First, he contends, the questions exceeded the permissible scope of cross-examination. Second, the testimony was irrelevant and immaterial.

Defendant's first contention fails, even if we assume that the prosecutor's questions probed an area not introduced on direct examination.[2] The scope of cross-examination is not limited in the Ohio courts to subject areas introduced on direct.

The Ohio Supreme Court has said:

---

[2] It is not clear what direction Neff's testimony on direct, concerning vectors, was meant to take. This testimony may have been thought by the Court and the prosecutor to have broached the topic of a ricochet theory.

"A witness may be properly cross-examined as to all relevant facts developed by the examination in chief and as to such other relevant facts into which the party calling such witness *could have inquired* in order to make out his case." (Emphasis supplied.) *Smith* v. *State* (1932), 125 Ohio St. 137, 148.

Under this rule, it is permissible for the prosecutor, on cross-examination of a defense witness, to posit and then contradict a defense theory to which the witness could have testified on direct. In *State* v. *Miracle* (1973), 33 Ohio App. 2d 289, 299, for example, the court approved the prosecutor's use of cross-examination of the defendant's expert medical witness to establish that an injection of phenobarbital would not affect a breathalyzer test. Such use of cross-examination is not prohibited on the ground that it tends to establish the cross-examiner's case, so long as it is otherwise "within proper limits," *Cities Service Oil Co.* v. *Burkett* (1964), 176 Ohio St. 449, 452.

Defendant's second contention, that the testimony adduced on cross-examination was immaterial and irrelevant, is argued only by conclusionary statement. Evidence tending to contradict the possibility of a ricochet is not irrelevant or immaterial where part of the testimony indicates that the defendant shot into the air and that the resulting wound to the victim who was in front of him was an accident.

Moreover, the defendant makes no demonstration of prejudice other than to allege that the testimony was "embarrassing." Whatever the legal import of embarrassment, it is certainly not synonymous with prejudice.

The second assignment of error lacks merit.

### III.

*Assignment of Error No. 3*:

"The court erred in refusing to charge the jury on the defendant's requested instruction regarding the issue of accident."

Defendant submitted two written requests for jury instructions on the issue of accident:

(1) "If, after considering all the evidence, including that on the subject of accident, you are not convinced be-

yond a reasonable doubt that the defendant had a purpose to bring about the shooting in this case, you must return a verdict of not guilty.

(2) "The defendant has testified that the shooting was an accident. I charge you that in such case, the burden is on the prosecution to prove, beyond a reasonable doubt, that the shooting was not an accident."

The Court declined to give the charges in the form presented. The charge given was:

"If after considering all of the evidence including that evidence on the subject of accident, you are not convinced beyond a reasonable doubt that the Defendant had the purpose to bring about either felonious assault or aggravated assault against Bernard Bailey, then your verdict would be not guilty of manslaughter resulting from a felonious assault or an aggravated assault."

If requested instructions in a criminal case are "correct and pertinent to the defense, reflected by the record," then the trial court must include them, at least in substance, in its charge, *State* v. *Nelson* (1973), 36 Ohio St. 2d 79, 84-85. The charge as given substantially reflects request number one.

In addition the defendant does not give a reason why failure to include the first special charge was error. Therefore, it is proper to pass over this contention on authority of Appellate Rule 12(A):

"Errors not specifically pointed out in the record and separately argued by brief may be disregarded."

The second requested charge requires that the issue of accident, assuming it is properly in the case, be disproved by the State beyond a reasonable doubt. Actually the instruction, under the teaching of *State* v. *Robinson* (1976), 47 Ohio St. 2d 103, should simply include the elements of accident and explain that accident negates guilt and that the State bears the burden of proving guilt beyond a reasonable doubt. There is no occasion to speak of the burden of proof in relation to accident, see *State* v. *Robinson, id.* at 113. It is enough if the jury understands that it is to assess the State's burden in the light of the whole evidence

including the defendant's proof on the issue of accident in order to determine whether the State's burden is satisfied.

Defendant's third assignment of error lacks merit.

## IV.

*Assignment of Error No. 4*:

"The court erred and abused it's [*sic*] discretion in allowing the jury to view a photograph of the deceased face, where there was no evidence indicating any injury to the deceased's face or any other relevancy to the case."

State's Exhibit 1 was the first of a series of photographs of the victim taken by the Coroner's office. This particular photograph depicted the victim's face. Defendant argues that the exhibit, since it showed none of the victim's injuries, served no purpose but to inflame the jury.

We think that the trial judge was within the lawful exercise of his discretion when he decided to admit the photograph "as to identification" of the victim. The test for proving an abuse of discretion in the admission of photographs was stated by the Ohio Supreme Court in *State* v. *Woodards* (1966), 6 Ohio St. 2d 14 at 25:

"Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury * * *.

"The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant. * * *" (citations omitted)

The only possibility of prejudice posed by this noninflammatory picture lay in reminding the jury that the victim was dead. No doubt this may have been cumulative, even unnecessary. It was not prejudicial.

The fourth assignment of error is without merit.

## V.

*Assignment of Error No. 5*:

"The court erred in denying to the defendant the right to question the defendant's engineering expert about the theory of vectors."

The court sustained an objection to the following question put by defense counsel to defense witness, engineer Thomas Neff:

"Now, speaking generally of that principle of vectors, if an object is traveling at an upward angle or a straight line and strikes something hard, what direction will it deflect?"

Defendant assigns this ruling as error.

Immediately thereafter the court overruled an objection to the following question:

"If a missile or an object or an item or anything is traveling on a straight line and is met by a solid object, is there a probable course of deflection?"

The court's reasons for disallowing the first question and allowing the second are not certain. The judge may have suspected that the first question—as to the behavior both of missiles traveling in a straight line and missiles traveling at an upward angle—had no single answer; on the other hand the second question focuses on the behavior of missiles traveling in a straight line. Or the judge may have meant to bar the defendant from proceeding on the assumption, implicit in the first question, that there would be a predictable course of deflection.

Inclusion of the second question and succeeding testimony concerning vectors seems to negate any possibility that defendant suffered prejudice by exclusion of the first question. We are unable, at any rate, to ascertain what prejudice may have been suffered, since defendant failed to proffer the testimony he had hoped to adduce. Without having proffered, defendant cannot demonstrate that the alleged error was prejudicial and reversible, *Pokorny v. Local 310, supra*, Assignment of Error No. 1.

Defendant's fifth assignment of error lacks merit.

*Judgment affirmed.*

KRENZLER, J., concurs.
CORRIGAN, J., concurs in the judgment only.