**State v. Capko**
*[Cite as 2 AOA 412]*

*Case No. 56814
Cuyahoga County, (8th)
Decided March 28, 1990*

R.C. 2921.02
R.C. 2921.43

*James J. McDonnell, 936 Terminal Tower Cleveland, Ohio 44113, James R. Willis, Bond Court Building, Suite 610, 1300 East Ninth Street, Cleveland, Ohio, John B. Gibbons, 2000 Standard Building, 1370 Ontario Street, Cleveland, Ohio 44114, For Plaintiff-Appellant.*

*John T. Corrigan, Cuyahoga County Prosecutor By: Winston Grays, Timothy Dobeck, The Justice Center, 1200 Ontario Street Clevelnad, Ohio 44113, For Defendants-Appellees.*

METIA, P.J.
I. THE FACTS, GENERALLY

Defendant-appellant, John P. Capko, appeals from his conviction is the Cuyahoga County Court of Common Pleas for the offense of bribery. R.C. 2921.02. Appellant's two day jury trial commenced on October 7, 1988.

At trial, the state opened its case-in-chief with the testimony of John W. Matson, the state's principal prosecuting witness. Mr. Matson testified that, in addition to being a part-time policeman for the City of Brecksville, Ohio, he operates a auto wrecking and storage business (a.k.a. City of Cleveland Impound Lot No. 7) located at 4402 West 130 Street in Cleveland Ohio. Mr. Matson stated that his auto storage business had been visited by former Cleveland Building Inspector Anthony Immormino several months prior to trial. The record reveals that Inspector Immormino issued notices of violations to Mr. Matson for inadequate setback and excess signage violations on October 2, 1987 and January 15, 1988, respectively. See Codified Ordinance Sections 345.03 and 327.02. Mr. Matson testified that approximately two months before trial, he received a suboena concerning a hearing on August 23, 1988 regarding the citation. As a result of the subpoena, Mr. Matson called the Cleveland Building Department to speak with Inspector Immormino, but learned that he had retired. Mr. Matson was directed appellant, who had taken over this particular case subsequent Mr. Immormino's retirement. During this initial telephone conversation, Mr. Matson testified, appellant allegedly stated with respect to the citations that "It's going to cost you." Appellant said he would "pull" some records and arranged a meeting for the following Monday, August 15, 1988, at Mr. Matson's place of business.

Approximately 10:00 a.m. on Monday, August 15, 1988, appellant met with Mr. Matson at the impound lot. Appellant allegedly stated to Mr. Matson that he had a farm in Ashtabula which had a septic tank that had to be fixed or replaced. Appellant told Mr. Matson "It's going to cost you $300", and Mr. Matson replied "I don't got that kind of money." Mr. Matson testified that at that time he was "shocked", "stunned" and "speechless for words."

Upon appellant's departure, Mr. Matson immediately telephoned his attorney, who directed him to Robert M. Wolff, who was Chief Assistant Law Director for the City of Cleveland. Mr. Matson testified that he explained the alleged proposition of bribery to Mr. Wolff, who put Mr. Matson in contact with Lieutenant Gersack of the Cleveland Police Department, Intelligence Unit. Lieutenant Gersack told Mr. Matson that he would provide him with six marked $50 bills.

Mr. Matson testified that on Tuesday, August 16, 1988, appellant returned to the impound lot, but Mr. Matson told appellant he did not yet have the money. Mr. Matson was stalling since he had not yet met with the police.

On the morning of Wednesday, August 17, 1988, Cleveland Police Detective Martin Hutter arrived first at the impound lot, fixed Mr. Matson for audio recording, and provided him with six marked $50 bills. Later that morning appellant telephoned Mr. Matson and arranged to meet with him at approximately 10:00 a.m. The three police detectives on the assignment then sat in an unmarked van parked among the cars stored on Mr. Matson's lot, and waited for appellant, who arrived at about 10:30 a.m.

Upon appellant's arrival, Mr. Matson activated the audio transmittal device and the police listened to and recorded the ensuing conversation in their van. State's Exhivit 1. Appellant asked Mr. Matson if he had the $300. Mr. Matson replied in the affirmative, handed appellant the six marked bills, and appellant counted from one to six.

Police also took several pictures of appellant and Mr. Matson as they were exchanging the money and leaving Mr. Matson's office. State's Exhibit 2A-C.

Mr. Matson testified that appellant had assured him that the summons for his pending appearance in court, and all violations, would be taken care of. Mr. Matson told appellant "thank you, I appreciate it." After appellant left Mr.

Matson's office, he was apprehended by the police.

Cleveland Police Detective Martin Hutter testified that Lieutenant Gersack had instructed him to interview Mr. Matson. Detective Hutter briefed Mr. Matson on the use of the microphone, and tape recorded the conversation between Mr. Matson and appellant, which began at approximately 10:25 and lasted some five minutes. After appellant left Mr. Matson's office, Detective Hutter and the other policemen approached appellant, identified themselves, immediately advised appellant of his *Miranda* rights, and placed him under arrest. The six marked bills were removed from appellant's top left shirt pocket.

Cleveland Police Detective John Fryer testified that he too was on this particular assignment, and aided in the arrest of appellant. Detective Fryer testified that he had read appellant his rights upon arrest, and that appellant then stated in the police van that it was the first time he had ever "done anything like this." The *Miranda* rights were again stated to appellant, who then said that he only "did it" to buy a septic tank in Ashtabula, that not one to share the money with him, and that the money was "an incentive to help Mr. Matson with his violations."

Cleveland Police Detective James Carbone testified that he was the third police officer at the Matson lot on Wednesday, August 17, 1988. Detective Carbone stated that he prepared the police report of this incident. He further testified that the *Miranda* rights were read to appellant at least four times, but appellant made admissions in spite of that fact.

For the defense, William Hastings testified that he was Chief Building Inspector for the City of Cleveland. He attested to his opinion that appellant is of good character, and was a valued employee, On cross-examination, Mr. Hastings reluctantly admitted that building inspector is in a position from which he might help a violator by lying to the city prosecutor.

Appellant took the witness stand in his won defense, and denied having said to Mr. Matson "It's going to cost you." Essentially, it was appellant's position that Mr. Matson, whom he had first met on Monday, August 15, 1988, had offered to *loan* appellant $300 two days later to help with the septic problem in Ashtabula. Appellant admitted that the *Miranda* rights were given to him four or five times, but stated that he "did not understand what was going on." Regarding his statement to police that he

had "never done anything like this" before, appellant explained to the jury that he was referring to the arrest in and of itself. Appellant testified that he accepted the money because Mr. Matson had offered it, and that he expected to pay back the money.

On cross-examination, appellant diffidently admitted that he would be in a position to influence the prosecutor with his reports. Appellant testified that the "incentive" discussed on the tape recording referred to an incentive to get the Ashtabula septic tank in, and that nothing about the monetary exchange had to do with Mr. Matson's citations. Appellant admitted that one of the first statements made by him on the tape recording was that he would talk to the city prosecutor on the Friday just prior to the scheduled hearing on the citations. Further, appellant admitted discussing with Mr. Matson another violation in the form of an illegal barrier on Mr. Matson's property, for which violation no citation was ever issued by appellant. Finally, appellant admitted that the $300 was not intended to be compensation for anything, but rather it was simply a loan.

The jury found appellant guilty of bribery. The trial court entered judgment on such verdict, and appellant timely filed this appeal.

## II. JURY CHARGE ON LESSER INCLUDED OFFENSE

In his first assignment of error, appellant contends:

"WHERE THE DEFENDANT WAS CHARGED WITH BRIBERY, (RC §2921.02), THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED CHARGE OF RECEIVING IMPROPER COMPENSATION, (RC §2921.43.)."

Bribery is proscribed at R.C. 2921.02, which provides in pertinent part:

"(B) No *** public servant *** shall knowingly solicit or accept for himself or another person any valuable thing *** to corrupt or improperly influence him or another public servant with respect to the discharge of his or the other public servant's duty."

Appellant argues that R.C. 2921.43, "Soliciting or receiving improper compensation", is a lesser included offense of bribery, and that the trial court should have instructed the jury on the availability of conviction on such lesser offense. R.C. 2921.43 provides in part:

"(A) No public servant shall knowingly solicit or accept and no person shall knowingly promise or give to a public servant either of the following:

"(1) Any compensation, other than as allowed by divisions (G), (H), and (I) of section 102.03 of the Revised Code or other provisions of law, to perform his official duties, to perform any other act or service in the public servant's public capacity, for the general performance of the duties of the public servant's public office or public employment, or as a supplement to the public servant's public compensation;

"(2) Additional or greater fees or costs than are allowed by law to perform his official duties."

While it is true, as the state points out in its brief, that a request for a jury instruction should be in writing, *State* v. *Fanning* (1982), 1 Ohio St. 3d 19, at paragraph 2 of syllabus, we find a more fundamental flaw in appellant's argument: receiving improper compensation is not a lesser included offense of bribery.

The Ohio Supreme Court held in *State* v. *Deem* (1988), 40 Ohio St. 3d 205, at para. 3 of syllabus:

"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. (*State* v. *Kidder* [1987], 32 Ohio St. 3d 279, 513 N.E. 2d 311, modified.)

Receiving improper compensation does carry a lesser penalty than bribery. The former is a first degree misdemeanor, R.C. 2921.43(D), while the latter is a third degree felony, R.C. 2921.02(E). Bribery, however, can be committed without the receipt of improper compensation also being committed. As explained by the Fifth District Court of Appeals of Ohio in *State* v. *Beros* (Sept. 4, 1981), Guernsey Appellate No. CA-633, unreported:

"The plain language of the bribery statute goes to soliciting things of value to do the job 'wrong' while the improper compensation statute prohibits receiving thigns of value to perform the duties 'right.' The elements are different and the evidence is different. See *State* v. *Kuchmak*, 159 Ohio St. 363, 368 (1963). Each statute goes to a separate class of crimes so that the less serious is not included within the more serious. See *State* v. *Nolton*, 19 Ohio St. 2d 133."

We accede to the view of our sister court, and find appellant's first assignment of error to be not well taken since R.C. 2921.43 is not a lesser included offense of R.C. 2921.02.

## III. EVIDENTIARY ISSUES

Appellant argues his second and third assignments of error in tandem, and we will address them together:

I."THE TRIAL COURT ERRED IN PERMITTING REDIRECT EXAMINATION OF THE STATE'S WITNESS, JOHN FRYER, WHICH EXCEEDED THE SCOPE OF THE PRECEDING CROSS-EXAMINATION."

II. "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO INTRODUCE A STATEMENT BY A THIRD PARTY TO 'REFRESH THE RECOLLECTION' OF STATE'S WITNESS, JOHN FRYER, DURING REDIRECT EXAMINATION."

Appellant's second assignment of error asserts prejudice in the trial court's permission of inquiry by the state on redirect examination, which exceeded the scope of defense counsel's cross-examination. Specifically, the state was permitted to elicit testimony from Detective Fryer on redirect examination regarding admissions made by appellant reflected on the police report, even though defense counsel did not refer to the police report on cross-examination.

The order of proceedings at trial is a matter entrusted to the sound discretion of the trial court. R.C. 2945.10; *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164; *State* v. *Mahoney* (1986), 34 Ohio App. 3d 114. In Ohio, cross-examination is not limited to subject areas covered on direct examination. Evid. R. 611; *State* v. *Rivers* (1977), 50 Ohio App. 2d 129. Further, the Ohio Supreme Court indicated in *State* v. *Faulkner* (1978), 56 Ohio St. 2d 42, that redirect examination is not limited to subject areas brought out on cross-examination:

"Only where the prosecution inquires into new areas during redirect examination must the trial court allow defense the opportunity to recross-examine. See *Alford* v. *United States* (1931), 282 U.S. 687." *Id.*, at 46. The high court clearly stated in *State* v. *Wilson* (1972), 30 Ohio St. 2d 199, at 204:

"The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof."

Of course, the term "abuse of discretion" connotes more than an error of law or judgment, but rather it implies an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. *State* v. *Maurer* (1984), 15 Ohio St. 3d 239.

In the instant case, even assuming appellant's second assigned error was properly preserved for review and that appellant did not "open the door" to the examination into the police report, we find no clear abuse of discretion on the part of the trial court and assignment of error is therefore not well taken.

In his third assignment of error, set forth *supra*, appellant claims that the trial court's allowance of the state's refreshment of Detective Fryer's recollection via the aforementioned police report constituted prejudicial error since it was but a pretext for the admission of innuendo and improper inferences. We disagree.

In the instant case, the trial court permitted Detective Fryer to refresh his recollection, concerning admissions freely made by appellant while in police custody, by reference to the police report prepared as a result of this incident.

Permission granted to a prosecutor to refresh a witness' memory is within the discretion of the trial court. See *State* v. *Price* (1979), 60 Ohio St. 2d 136, at 139; Evid. R. 612. Definition of "abuse of discretion" has already been set forth in this opinion.

We find no abuse of discretion in the trial court's allowance of Detective Fryer's reference to the police report. Defense counsel was permitted to examine Detective Fryer after the prosecution's examination of this topic, and appellant has demonstrated no prejudice in this regard.

Accordingly, appellant's third assignment of error is not well taken and the judgment of the trial court is affirmed.

*Judgment affirmed.*

FRANCIS E. SWEENEY, J., and
*PAUL H. MITROVICH, J., Concur.

*SITTING BY ASSIGNMENT:
JUDGE PAUL H. MITROVICH, of the Lake County Common Pleas Court.