OPINION *Page 2 
{¶ 1} This matter is on appeal of appellant's conviction and sentence for one count of murder, one count of rape of a child less than thirteen years of age, with force, and one count of endangering children.
 STATEMENTS OF THE FACTS AND CASE {¶ 2} On May 11, 2006, appellant, Henry Sunderman was indicted by the Stark County Grand Jury for one count of murder in violation of R.C.2903.02(B) for having caused the death of Zoey Sunderman during the course of committing child endangering; one count of child endangering in violation of R.C.2919.22(B)(1) a second degree felony of violence; and one count of rape in violation of R.C. 2907.02(A)(1)(b) with a specification that the victim was less than ten years of age and that the offense involved the use of force.
 {¶ 3} On September 18, 2006, the matter proceeded to trial. The evidence established that, at the time of the offense, the victim Zoey Sunderman was seven months old. Leslie Sunderman is the biological mother of four children who are Zoey, Trent (age seven), Chrissy (age five), and Heaven (age two). Appellant, Henry Sunderman, is the paternal uncle of the victim.
 {¶ 4} Leslie worked weekdays from 6:30 A.M. until 2:30 P.M. at a restaurant located in Aultman Hospital. During the work week Leslie paid the appellant to baby-sit her four children. Pursuant to the babysitting arrangement, the appellant would stay at Leslie's Waynesburg apartment from Sunday night through Friday night and return to his Canton apartment on the weekends. The arrangement appeared to be going fine with the exception that the appellant didn't like to change diapers and asked Chrissy to *Page 3 
change her younger sisters' diapers. Leslie discussed this problem with the appellant and he agreed to change the diapers himself.
 {¶ 5} On March 10, 2006, Leslie got up, woke the appellant, changed Zoey and left for work around 6:05 A.M. When Leslie left for work Zoey was fine. At approximately 8:45 A.M. the appellant called Leslie and told her that she needed to come home because Zoey wasn't breathing.
 {¶ 6} At approximately 8:47 A.M. paramedic Steven Van Meter and his partner arrived at Leslie's Waynesburg residence. The paramedics found Zoey lying on the living room floor. Van Meter testified that Zoey was blue, not breathing and pulseless. TI. 233 and 252. The paramedics quickly began resuscitative efforts including inserting a pharyngeal airway and giving Zoey resuscitative medication. The paramedics then transported Zoey to Aultman Hospital.
 {¶ 7} At Aultman Hospital, Zoey was placed on life support and life flighted to Akron Children's Hospital. At Akron Children's Hospital, Dr. Steiner informed Leslie that Zoey would not recover from her injuries and Leslie agreed to take Zoey off of life support. At approximately 2:17 P.M. Zoey died in her mother's arms. TI. 210-212.
 {¶ 8} On March 11, 2006, Dr. Dorothy Dean from the Summit County Medical Examiner's Office performed an autopsy on the seven month old child. She testified that the autopsy revealed internal evidence of injury including bleeding between the skull and neck bone and brain stem bleeding. TII. 430. She testified that the brain stem injury was most likely caused by fast shaking, which interfered with the child's breathing and was fatal. TII. 430 and 438. Dr. Dean further testified that the autopsy also revealed anal trauma. She stated that she observed redness in the anal opening and *Page 4 
two internal tears in the rectum. She stated that the rectal tears were straight down along the length of the rectal tube, were ½ and 1½ inches in length, and were extensive and high up in the rectal tissue. She stated that in her opinion something was inserted in the child's rectum and that the injuries were not consistent with a finger accidentally slipping into the child's bottom. She stated that the penetration would have been a painful event for the child and that there was no question that it occurred as the result of an anal assault. TII. 449 and 477. Finally she testified that the cause of the child's death was blunt force trauma to the neck and blunt force trauma to the child's anus and rectum. TI. 452.
 {¶ 9} Holly Steinbach, a social worker with the Stark County Department of Job and Family Services assigned to Zoey's case, testified that on March 10, 2006, she, another caseworker and Officer Rachel Vokar spoke with the appellant and tape recorded his statement. She testified that appellant initially denied any responsibility for Zoey's injuries. TI. 320. However, during the course of the interview, the appellant stated that he didn't mean to harm the child and that he had never touched a child "in that way". T.I. 320. In the statement the appellant admitted that he didn't like to change diapers and that his fingertip must have accidentally slipped into the child's rectum. Appellant then admitted that he inserted the middle finger of his left hand into her rectum up to his knuckle. TI. 322. The appellant also stated that Zoey made a gasping and gurgling sound and that he saw Zoey's eyes roll back in her head. He stated that he freaked out, ran upstairs, banged his head on the wall and wiped the poop off of his hands on a washcloth in the bathroom. He then came downstairs, attempted CPR on Zoey and called 911. TI. 323. Appellant was placed under arrest at 5:45 P.M. *Page 5 
 {¶ 10} On March 12, 2006, Officer Rachel Vokar of the Waynesburg Police Department questioned appellant a second time at the Stark County Jail. Appellant's second statement was also taped and admitted into evidence. During the conversation appellant told Officer Vokar that while he was wiping Zoey's bottom his finger slipped into her rectum up to the knuckle. He said that Zoey began screaming and crying. He told the officer that he got scared and shook Zoey a couple of times to get her to stop screaming and crying. He told the officer that after he shook Zoey her breathing became shallow and her eyes started to roll back in her head. He said that he put the baby face down in the bassinet and ran upstairs. When he came back downstairs he put the baby on the floor and tried to give the baby CPR. When she didn't respond, he said that he ran to the neighbors and called 911. TI. 359-383. The only evidence presented by appellant was the taped 911 call he made on March 10, 2006, after Zoey stopped breathing.
 {¶ 11} After the State's case, the appellant notified the trial court that he would be requesting an accident instruction. T.547-548. After resting his case, the appellant renewed his motion for an instruction on the defense of accident. T.556-557. Appellant's request was denied. T.556-559.
 {¶ 12} Upon deliberation, the jury found appellant guilty as charged of one count of murder, one count of felony child endangering and one count of rape.
 {¶ 13} The trial court merged the charges of child endangering and murder and proceeded to sentencing. Appellant was sentenced to serve fifteen years to life for the murder conviction and was sentenced to serve a life sentence for the rape of a child less than ten years of age. The trial court ordered appellant's sentences to be served *Page 6 
consecutively and further found appellant to be an aggravated sexually oriented offender.
 {¶ 14} It is from this conviction and sentence that appellant now seeks to appeal setting forth the following assignments of error:
 {¶ 15} "I. THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY ON ACCIDENT THEREBY DENYING APPELLANT A FAIR TRIAL.
 {¶ 16} "II. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION AND THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 I {¶ 17} In the first assignment of error appellant argues that the trial court erred in failing to instruct the jurors on the defense of accident.
 {¶ 18} Initially we note that at trial appellant did not object to the trial court's failure to give the requested jury instruction on accident. Pursuant to Crim R. 30(A) "a party may not assign as error the giving or failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." A failure to object to jury instructions constitutes a waiver of that issue, unless but for the error the outcome of the trial clearly would have been different. State v. Long (1978), 53 Ohio St. 2d 91, 372 N.E. 2d 804;State v. Underwood (1983), 3 Ohio St.3d 12, 13, 444 N.E.2d 1332;State v. Jackson (2001), 92 Ohio St.3d 436, 444, 751 N.E. 2d 946, (Absent plain error, a party waives error concerning jury instructions if the party fails to object before the jury retires). *Page 7 
 {¶ 19} Because counsel failed to object to the trial court's refusal to give the accident instruction prior to jury deliberations we must review this assignment pursuant to a plain error analysis. Under the plain error standard, first there must be an error, i.e. a deviation from a legal rule. Second, the error must be plain, i.e. an obvious defect in the trial proceedings. Third the error must have affected "substantial rights" i.e. the outcome of the trial. State v.Johnson, Franklin App. No. 06AP-878, 2007-Ohio-2792.
 {¶ 20} The Ohio Supreme Court has advised that Crim.R. 52(B) plain error is to be taken "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 21} Generally, a trial court must provide the jury with all instructions that are relevant and necessary to weigh the evidence and discharge their duties as the fact finders. State v. Joy,74 Ohio St.3d 178, 181, 1995-Ohio-259, 657 N.E.2d 503, citing State v. Comen (1990),50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. If a requested instruction contains a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. State v. Nelson (1973), 36 Ohio St. 2d 79,303 N.E. 2d 865, overruled on other grounds, 1 Ohio St. 3d 19, 437 N.E. 2d 583, paragraph one of the syllabus. However, the corollary of this maxim is true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. Riley v.Cincinnati (1976), 46 Ohio St. 2d 287, 348 N.E. 2d 135; Murphy v.Carrollton Manufacturing Co. (1991), 61 Ohio St. 3d 585, 591, 575 N.E. 2d 828, 832. "In reviewing the record to ascertain the presence of sufficient evidence to support the giving of an *** instruction, an appellate court should *Page 8 
determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v.Huettner (1971), 28 Ohio St. 2d 54, 275 N.E. 2d 340, at syllabus;Murphy v. Carrollton Manufacturing Co., Supra; State v. Coleman, 6th Dist. No. S-02-41, 2005-Ohio-318 at paragraph 12; See also, State v. Robbins (1979), 58 Ohio St.2d 74, 80, 388 N.E.2d 755, quoting State v. Melchior (1978), 56 Ohio St.2d 15, 381 N.E.2d 195, paragraph one of the syllabus.
 {¶ 22} In order to establish that a failure to give a requested jury instruction is reversible error, the appellant must show that the court's refusal to give the requested instruction was an abuse of discretion and that he suffered prejudice as a result. State v.Griffin (July 15, 2005), Montgomery App. No. 20681, 2005-Ohio-3698. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144.
 {¶ 23} Accident is not an affirmative defense. In State v. Curry
(1989), 45 Ohio St.3d 109, 111-112, 543 N.E.2d 1228. Rather, the defense of accident is tantamount to a complete denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct. State v. Poole (1973), 33 Ohio St.2d 18, 294 N.E.2d 888.
 {¶ 24} An accident is as an unfortunate event occurring casually or by chance. State v. Brady (1988), 48 Ohio App.3d 41, 548 N.E.2d 278. Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2). Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." Id. When accident *Page 9 
has been raised as a defense, with a supporting record, a court errs when it refuses to charge the jury on the issue. Brady, supra; State v.Rivers (1977), 50 Ohio App.2d 129, 361 N.E.2d 1363. See also State v.Atterberry (1997), 119 Ohio App. 3d 443, 695 N.E.2d 789.
 {¶ 25} In this case, we do not find that the record supported an instruction on the defense of accident. As such we do not find that the trial court erred in failing to give the instruction on accident. During the State's case, evidence was presented regarding appellant's inconsistent statements. The record reflects that in a series of statements, initially appellant denied any wrongdoing, later appellant said his fingertip slipped into the child's rectum and finally the appellant admitted that he had inserted his middle finger into the child's rectum to the depth of his knuckle. He further admitted that when he inserted his finger into the child's rectum, the child began to scream and cry. He stated that, in an effort to stop her crying, he picked her up and shook her a couple times. He stated that after he shook her she started gasping for breath and her eyes rolled back in her head.
 {¶ 26} Although appellant's counsel argued that the appellant's actions and their consequences were accidental, the physical evidence suggested otherwise. The medical examiner testified that Zoey's internal rectal tears were extensive and would have been painful for the child. She specifically stated that the injuries were not the result of a finger accidentally slipping into the child's rectum. She testified that the finger would have had to have been forcibly inserted into the rectum. She also testified that the fatal brain stem injury was most likely caused by a violent fast shaking of the child's *Page 10 
head which caused the infant's neck to go back and forth in a manner similar to whiplash thereby causing the brain stem bleeding.
 {¶ 27} Even if it is arguable that the trial court erred in failing to provide a jury instruction on the accident defense, "if the trial court's general charge was otherwise correct, it is doubtful that this error of omission would ever satisfy the [test] for `plain error' by affecting the outcome of the trial." State v. Stubblefield (Feb. 13, 1991), Hamilton App. No. C-890597; State v. Thomas (Aug. 29, 1997), Hamilton App. No. C-960242; See also, State v. Glagola, Stark App. No. 2003CA00006, 2003-Ohio-6018; State v. Rohaley, (December 28, 1998), Stark App. No. 1998CA00092. Such is the case because the accident defense is not an excuse or justification for the admitted act, the effect of an accident instruction would simply be to remind the jury that the defendant presented evidence of accident in order to negate the defendant's criminal intent. State v. Smith (May 10, 1996), Miami App. No. 95-CA-17, Thomas, supra. In this regard, "[i]f the jury had credited [the defendant's] argument [of accident], [the jury] would have been required to find [the defendant] not guilty * * * pursuant to the court's" general instructions. See State v. Manbevers (Sept. 28, 1994), Pickaway App. No. 93CA23.
 {¶ 28} The record reflects that the trial court's general charge to the jury included instructions for murder, child endangering and rape. The trial court further instructed the jury that the State bore the burden to prove every element of each of the charged offenses by proof beyond a reasonable doubt. T.597-616. Appellant's counsel argued throughout the case that the injuries to the child were the result of an unfortunate accident and the jury was free to consider the defense of accident and acquit the appellant on that basis. *Page 11 
 {¶ 29} For the reasons stated above, we do not find that the trial court abused its discretion in refusing to give an instruction on accident. And therefore, we find that the trial court did not commit error in that regard. Even if we were to find that the trial court erred, the error was not plain error because the failure to give said instruction did not affect the outcome of the trial. Accordingly, appellant's first assignment of error is hereby overruled.
 II {¶ 30} In the second assignment of error, appellant argues that counsel was ineffective for failing to object to the trial court's omission of the accident instruction prior to jury deliberations. Specifically, appellant argues that the failure to object prevented the trial court from considering the omission prior to the jury's deliberation and failed to preserve the issue for appeal.
 {¶ 31} To prevail on a claim of ineffective assistance of counsel, appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must affirmatively demonstrate to a reasonable probability that were it not for counsel's errors, the result of the trial or proceeding would have been different. Id., State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. This threshold of proof is high given Ohio's presumption that *Page 12 
a properly licensed attorney is presumed to be competent. State v.Hamblin (1988), 37 Ohio St.3d 153, 524 N.E.2d 476.
 {¶ 32} In this case, appellant's counsel notified the court that appellant would be requesting a jury instruction on the defense of accident and renewed the motion prior to the jury's deliberation. Therefore, although counsel did not specifically object to the omission, the trial court had an opportunity to review appellant's request prior to deliberation.
 {¶ 33} Also, appellant's counsel was not precluded from arguing that the injuries resulted from an accident. Appellant's counsel zealously argued during trial and in closing statements that the child's injuries and death were all the result of an unfortunate accident. Had the jury chosen to believe the appellant's position, they could have entered a verdict of acquittal.
 {¶ 34} Even if we presume that trial counsel's failure to object to the trial court's jury instruction fell below an objective standard of reasonable representation, we find that the error was harmless and did not amount to ineffective assistance of counsel. Had counsel objected to the failure of the trial court to give the accident jury instruction and preserved that issue for appellate review, we do not find that the outcome of this case would be any different. We have already stated in the first assignment of error, that it was not error for the trial court to refuse to give the accident jury instruction. In sum, had counsel properly preserved said issue for appeal, it would not have made any difference in the outcome of this case. Therefore, we do not find ineffective assistance of counsel for failing to preserve said error for appeal. Even if we were to find that the trial court erred in failing to give that instruction, the error was harmless. Based on the *Page 13 
overwhelming evidence of appellant's guilt, the giving of that instruction would not have made any difference in the outcome of the trial.
 {¶ 35} Accordingly, appellant's second assignment of error is hereby overruled.
 {¶ 36} The judgment of the Stark County Court of Common Pleas is hereby affirmed.
 Edwards, J., Gwin, P.J., and Wise, J., concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1