OPINION
{¶ 1} Appellant Bertrum Moore appeals his conviction in the Mahoning County Court of Common Pleas for complicity to aggravated murder in violation of R.C. 2923.03(A)(2)(F) and R.C. 2903.01(A)(F). Appellant contends that the trial court failed to properly instruct the jury on the mens rea required to commit the crime, and challenges the sufficiency of the evidence on that essential element.
 {¶ 2} The record reflects both the jury instruction and the trial court's response to two jury questions about mens rea were susceptible to an interpretation consistent with Ohio law, and, therefore, Appellant cannot demonstrate that he suffered prejudice as a result of an erroneous instruction. Likewise, because the conviction in this case turned completely on Appellant's credibility, there was sufficient evidence to support the jury verdict. The judgment of the trial court is affirmed.
 FACTS {¶ 3} The only testimony regarding the events leading to the death of Martwain Dill on November 3, 2006 was provided by Appellant. That morning, Appellant, who had just turned eighteen, attended an English class at Life Skills. (Trial Tr., p. 486.) Life Skills is a high-school alternative program that allows students aged sixteen to eighteen to earn a GED. When Appellant left Life Skills that morning, he agreed to give two other students, Eric Lewis and Keith Tillis, a ride home. (Trial Tr., p. 494.)
 {¶ 4} Lewis and Tillis were school acquaintances, but Appellant testified that he did not have a relationship with either of them outside of school. (Trial Tr., p. *Page 2 
490.) He claimed that he did not mind taking them home because their houses were on the way to his home. (Trial Tr., p. 494.) He then explained that he did not know where either young man lived, but that he had seen Tillis outside houses located in his neighborhood.
 {¶ 5} While they were on the road, the men passed Dill, who was in a pickup truck traveling in the opposite direction. (Trial Tr., p. 499.) Appellant testified that he did not know Dill. (Trial Tr., p. 500.) Lewis, who was in the front seat with Appellant, started "going off" and "cussing," leading Appellant to believe that Lewis had a problem with Dill. (Trial Tr., pp. 499, 510.)
 {¶ 6} Next, Lewis made a call on his cellular phone, and Appellant heard him say that he wanted to "get" Dill and "wanted to kill him and stuff like that." (Trial Tr., pp. 501-502.) Lewis told the unidentified person on the phone that they were coming to get him. (Trial Tr., p. 537.)
 {¶ 7} After ending the phone call, Lewis directed Appellant to take him to his house, and proceeded to give Appellant directions to what Appellant believed was Lewis' house. (Trial Tr., p. 503.) However, when Appellant pulled into the driveway at 700 John Street, Gary Crockett emerged from the house. (Trial Tr., p. 506.) Appellant testified that he did not know Crockett.
 {¶ 8} On direct examination, Appellant's counsel asked him if Crockett had anything with him when he went to the back of the car, Appellant responded, "[y]es, he had a — I believe it was a rifle in a trash bag." (Trial Tr., p. 508.) Next, his trial counsel asked, "[w]hat do you think when you get your car into the driveway and out *Page 3 
pops Gary Crockett with a rifle in a trash bag?" Appellant responded, "I'm thinking to myself, I mean, I just don't want to get caught up in something. I mean, I kind of figured he was probably going to get in the car, but I didn't think they was [sic] going to do what they was [sic] going to do." (Trial Tr., p. 509.) It appears from this testimony that Appellant knew that Crockett had a rifle in the trash bag before Crockett entered the vehicle.
 {¶ 9} After Crockett got into the car, he gave a handgun to Lewis. (Trial Tr., p. 510.) On cross-examination, Appellant conceded that, at that point, he knew that his passengers were looking to kill someone. (Trial Tr., p. 538.)
 {¶ 10} Lewis instructed Appellant to drive. Appellant testified that he was scared and nervous, and that he could not recall any conversation between his passengers. (Trial Tr., p. 512.) He testified that his head was "just spinning" and the conversation "was just noise." He further testified that he was praying that they could not find Dill. (Trial Tr., p. 541.)
 {¶ 11} Lewis spotted Dill at the intersection of Glenwood Avenue and Earle Street, and instructed Appellant to stop. (Trial Tr., p. 513.) Crockett, Lewis, and Tillis got out of the car, then Crockett and Lewis approached Dill's truck and Tillis ran from the scene. Appellant testified that he initially sat there after everyone else got out of his car, then he, "finally got back in [his] mind state, got back focus, and took off." (Trial Tr., p. 514.) He then heard Crockett and Lewis open fire on the truck. (Trial Tr., p. 515.) *Page 4 
 {¶ 12} Appellant testified that he turned off Glenwood Avenue onto Linwood Avenue and proceeded about two car lengths when he saw Crockett running behind the car with the rifle in his hand. (Trial Tr., pp. 517-518.) Appellant stopped to permit Crockett to get back in the car. (Trial Tr., p. 519.) He claims that he stopped the car out of fear that Crockett would shoot him. At some point, while Appellant and Crockett were driving through the park, Crockett told Appellant to stop the car to permit Crockett to hide the rifle in the trunk. (Trial Tr., p. 520.) Appellant then took Crockett back to his home on John Street.
 {¶ 13} Appellant went to his house and talked to his mother and brother about what had occurred that morning. (Trial Tr., p. 521.) He claimed that he was scared and nervous and "wasn't in [his] right mind." He immediately traveled to his sister's house in Columbus, Ohio, but returned a few days later to report the incident to the police. (Trial Tr., pp. 521-522.)
 {¶ 14} During his initial police interview, Appellant concealed the fact that, after the shooting, he picked up Crockett and drove him home. (Trial Tr., p. 523.) He also did not tell the police that Tillis was in the car prior to the shooting. Appellant explained that he concealed the foregoing facts in order to "save [himself] out of trouble." (Trial Tr., p. 525.)
 {¶ 15} Appellant testified that he had no idea that he was going to be involved in a murder on November 3, 2006 and that he did not know Dill. (Trial Tr., p. 526.) In a lineup, Appellant incorrectly identified Crockett's brother as Crockett. (Trial Tr., p. 526.) However, he correctly identified Crockett in a second lineup. (Trial Tr., p. 527.) *Page 5 
 {¶ 16} On direct examination, Appellant testified that the time between leaving Life Skills and finding Dill on Glenwood Avenue was approximately twenty minutes. On cross-examination, he conceded that approximately an hour had passed. Appellant could not account for the forty minutes that went unaccounted for in his direct testimony. (Trial Tr., pp. 544-548.) He denied the prosecutor's suggestion that the additional forty minutes were spent waiting at Crockett's house while the men prepared to commit the crime. (Trial Tr., p. 546.)
 {¶ 17} Appellant also conceded on cross-examination that on two occasions prior to trial he had told Youngstown police officers that Crockett was in the front seat and Lewis was in the back seat of the vehicle. (Trial Tr., pp. 533-534.) Appellant denied changing his testimony at trial to comport with the testimony of a witness to the crime, Lacreshia May, who testified that Crockett emerged from the back seat of the car. (Trial Tr., pp. 297, 549.)
 {¶ 18} Finally, on cross-examination, Appellant acknowledged that no one threatened him with violence, that he never demanded that his passengers get out of the car, and he did not flee the scene when the passengers exited the car at the intersection of Glenwood Avenue and Earle Street. (Trial Tr., pp. 557-558.)
 {¶ 19} Appellant's co-defendants in this case, Lewis and Crockett, were awaiting a separate trial and, as a consequence, did not testify at Appellant's trial. Likewise, Tillis provided no testimony regarding the events of November 3, 2006.
 ASSIGNMENT OF ERROR I *Page 6 {¶ 20} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND VIOLATED APPELLANT MOORE'S DUE PROCESS RIGHTS AND RIGHT TO A FAIR TRIAL UNDER THESIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE I, SEC. 10 OF THE OHIO CONSTITUTION WHEN IT FAILED TO INSTRUCT THE JURY ON THE PROPER MENS REA ON COMPLICITY TO AGGRAVATED MURDER PER R.C. 2903.01(A)."
 {¶ 21} When reviewing a trial court's jury instructions, this Court reviews the record to determine whether the trial court's decision to give or not to give a requested jury instruction constitutes an abuse of discretion under the facts and circumstances of the case. State v.Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." State v. Clark (1994), 71 Ohio St.3d 466, 470,644 N.E.2d 731. In order to establish that a failure to give a requested jury instruction is reversible error, the appellant must show he suffered prejudice as a result of the trial court's refusal to give the requested instruction. State v. Sunderman, 5th Dist. No. 2006-CA-00321,2008-Ohio-3465, ¶ 22.
 {¶ 22} Appellant was indicted pursuant to R.C. 2923.03(A)(2) and R.C. 2903.01(A). R.C. 2923.03(A)(2) reads, in pertinent part, "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense." A charge of complicity may be stated in terms of this section, or in terms of the principal offense. *Page 7 
R.C. 2903.01(A) reads, in pertinent part, "[n]o person shall purposely, and with prior calculation and design, cause the death of another."
 {¶ 23} Therefore, in order to be found guilty of aiding and abetting another to commit aggravated murder, a defendant must act "purposely" and "with prior calculation and design." State v. Stoutmire (May 17, 2000), 7th Dist. No. 96 C.A. 186, *3-4; State v. Prichard (February 7, 1996), 1st Dist. No. C-941011, *3.
 {¶ 24} The jury instruction at issue read, in pertinent part:
 {¶ 25} "The defendant is charged with complicity in the commission of the offense of aggravated murder. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 3rd day of November of 2006, and in Mahoning County, Ohio, the defendant purposely aided and abetted others in committing the offense of aggravated murder, to wit: Did purposely and with prior calculation and design, caused [sic] the death of Martwain Dill.
 {¶ 26} "* * *
 {¶ 27} "A person acts purposely when he aids or abets another when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to aid or abet another in causing the death of a person.
 {¶ 28} "* * *
 {¶ 29} "Prior calculation and design means that the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide, *Page 8 
which process of reasoning must have included a mental plan involving studied consideration of the method and the instrument with which to cause the death.
 {¶ 30} "To constitute prior calculation, there must have been sufficient time and opportunity for the planning of an act of homicide, and the circumstances surrounding the homicide must show a scheme designed to carry out the calculated decision to cause the death. No definite period of time must elapse and no particular amount of consideration must be given, but acting on the spur of the moment or after momentary consideration of the purpose to cause the death is not sufficient." (Trial Tr., pp. 637-640.)
 {¶ 31} Appellant concedes that the first paragraph of the foregoing jury instruction was "arguably properly worded." (Appellant's Brf., p. 7.) In other words, Appellant admits that the jury instruction was not erroneous, because it may be interpreted to properly state the law, that is, that Appellant must be shown to have acted both "purposely" and "with prior calculation and design."
 {¶ 32} Appellant premises his first assignment of error on the fact that both the state and the trial court apparently believed that the state need only prove that Appellant acted "purposely." Prior to instructing the jury, the trial court stated, "[i]ndeed the case law does support the culpability of the mental state of your client, which is purposely. I will grant you that this, the [Ohio Jury Instructions], can be confusing, and so perhaps you can — through this case, * * * you can change the wording of OJI." (Trial Tr., pp. 630-631.) *Page 9 
 {¶ 33} Appellant contends that, even though the jury instruction itself was not erroneous, the trial court's answer to two jury questions negated the element of "prior calculation and design" as it applied to him. During deliberations, the jury asked the trial court, "[d]o we need to determine if Bertrum himself was involved in the planning of the act in order to determine the prior calculation and design element?" The trial court responded, "[t]he answer is no. You are to consider, though, all of the evidence and all of the jury instructions." (Trial Tr., p. 655.)
 {¶ 34} An unidentified juror immediately asked, "[c]an we ask another question?" The trial court instructed the jurors that their questions must be in writing, whereupon the jury returned to the jury room. The transcript reflects that within ten minutes, the jury asked, "When the first paragraph on Page 5 states a person acts purposely when he aids or abets another when it is his specific intention, does the his [sic] refer to the person aiding and abetting or the one that was aided?" (Trial Tr., pp. 656-657.) The trial court responded, "[i]t refers to the person aiding and abetting the defendant. I remind you, you have to read all of the instructions in relation to all other instructions and that all of these things are defined for you in the jury instructions." (Trial Tr., p. 657.)
 {¶ 35} In 1974, the "prior calculation and design" standard replaced the "deliberate and premeditated malice" standard. State v. Cotton
(1978), 56 Ohio St.2d 8, 10-11. Under the latter standard, "a killing could be premeditated even though conceived and executed on the spur of the moment." Id., at 11. "Prior calculation and design," however, is a more stringent standard. Id. It continues to, "embody the *Page 10 
classic concept of the planned, cold-blooded killing while discarding the notion that only an instant's prior deliberation is necessary."State v. Taylor (1997), 78 Ohio St.3d 15, 19, certiorari denied,522 U.S. 851.
 {¶ 36} Rather than instantaneous deliberation, "prior calculation and design" requires a scheme designed to implement the calculated design to kill. Cotton at 11. "Prior calculation and design requires `some kind of studied analysis with its object being the means by which to kill.'"State v. Ellenwood (Sept. 16, 1999), 10th Dist. No. 98AP-978, *8, quoting State v. Jenkins (1976), 48 Ohio App.2d 99, 102, 355 N.E.2d 825.
 {¶ 37} While the Ohio Supreme Court has declined to find "prior calculation and design" in "explosive, short-duration situations," the court has nonetheless upheld some "short-lived emotional situations" that do not fit the classic mold of a "planned, cold-blooded killing."Taylor at 19-20. Because no bright-line test or rigid set of factors defines "prior calculation and design," the determination as to whether an accused acted with "prior calculation and design" "turns on the particular facts and evidence presented at trial." Id. at 20.
 {¶ 38} Consequently, "[w]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." Cotton, paragraph three of the syllabus. *Page 11 
 {¶ 39} The Tenth District Court of Appeals recently recognized that "prior calculation and design" can be proved from the circumstances surrounding a murder in several ways: (1) evidence of a preconceived plan leading up to the murder, (2) evidence of the perpetrator's relationship with the victim, including evidence of any strains in that relationship, or (3) evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill. State v. Small, 10th Dist. No. 06AP1110, 2007-Ohio-6771, ¶ 12.
 {¶ 40} Despite the trial court's confusion as to the law, the answer to the jury's first question is consistent with Ohio law. Evidence of a preconceived plan is only one method of proving "prior calculation and design." Therefore, the jury did not have to conclude that Appellant was involved in the initial planning of the crime to find that he had the requisite mens rea to commit the crime.
 {¶ 41} For instance, the jury could infer "prior calculation and design" from the manner in which the crime was executed. Appellant conceded that Lewis announced his intent to murder Dill shortly after seeing him on the road, and concocted a plan with Crockett via his cellular phone. Despite the fact that Appellant knew of Lewis' intentions, he drove to Crockett's house, drove the men around the neighborhood in search of Dill, and provided a means of escape for Crockett.
 {¶ 42} Furthermore, Appellant conceded on cross-examination that he was in the car for approximately one hour prior to the shooting. The jury could have concluded that, even though Appellant was not a party to the initial plan to murder Dill concocted by Lewis and Crockett, he had sufficient time to engage in, "some kind *Page 12 
of studied analysis with its object being the means by which to kill," during that time. See Ellenwood, supra. Therefore, the jury did not need to find that Appellant was involved in the initial planning of the act in order to conclude that he acted with prior calculation and design, the jury could have concluded that he developed the requisite mens rea at some point during the hour that the men searched for Dill.
 {¶ 43} The trial court's response to the jury's second question about mens rea is clearly consistent with Ohio law. The jury asked whether the "his" in the phrase, "a person acts purposely when he aids or abets another when it is his specific intention to cause a certain result," referred to the person aiding and abetting or the one that was aided. The trial court stated that "his specific intention" meant Appellant's specific intention, which is a correct interpretation of Ohio law.
 {¶ 44} Because the jury instruction and the trial court's response to the jury's questions were consistent with Ohio law, Appellant cannot demonstrate that he suffered prejudice as a result of the trial court's misinterpretation of the law. Accordingly, Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II {¶ 45} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED WHEN IT DENIED APPELLANT MOORE'S MOTION FOR A NEW TRIAL."
 {¶ 46} The denial of a Crim. R. 33 motion for new trial is reviewed for abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54, paragraph one of the syllabus. "The decision to grant a motion for new trial is an extraordinary measure that should be used only when the evidence presented weighs heavily *Page 13 
against the conviction." State v. Samatar, 152 Ohio App.3d 311,2003-Ohio-1639, 787 N.E.2d 691, ¶ 35.
 {¶ 47} Appellant's motion for new trial was premised upon Crim. R. 33(A)(1), (3), and (5). Crim. R. 33(A) states that a new trial may be granted for any of the following causes that have materially affected a defendant's substantial rights: "(1) Irregularity in the proceedings, or in any order ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; * * * (3) Accident or surprise which ordinary prudence could not have guarded against; * * * (5) Error of law occurring at the trial."
 {¶ 48} On June 29, 2007, Appellant filed a motion to request a transcript of the closing statements, the jury instructions, and the jury's questions. The motion to request a transcript was granted on July 3, 2007. Appellant filed his motion for new trial on July 6, 2007. The motion for new trial presented a pure legal issue, that is, whether the jury instructions and the trial court's answers to the jury questions were consistent with Ohio law. Although the requested transcripts were not yet filed, a complete copy of the jury instructions and a transcript of the jury's questions and the trial court's answers were attached to the state's response to the motion for new trial and before the judge.
 {¶ 49} The motion for new trial was denied on July 26, 2007. The judgment entry reads, in its entirety, "After a review of the entire charge of the trial court and of the transcript of the proceedings following the charge as well as the matters *Page 14 
contained in the motion for new trial and the response thereto, the motion for new trial, filed July 6, 2007, is overruled."
 {¶ 50} As in his first assignment of error, Appellant relies upon the trial court's misinterpretation of the law regarding mens rea to establish his right to a new trial. While we can glean from the record that outside of the jury's presence the trial court misinterpreted the law, the jury instructions and answers to the jury's questions were nonetheless correct and consistent with Ohio law. As a consequence, Appellant cannot demonstrate that the trial court's misinterpretation of the law materially affected a substantial right. Accordingly, Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III {¶ 51} "THE STATE FAILED TO MEET ITS CONSTITUTIONAL BURDEN OF PROOF BEYOND A REASONABLE DOUBT WHEN IT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT MOORE ACTED PURPOSELY AND WITH PRIOR CALCULATION AND DESIGN TO SUPPORT A CONVICTION FOR COMPLICITY TO AGGRAVATED MURDER IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."
 {¶ 52} "Sufficiency of the evidence" is a legal standard that is applied to determine whether a case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148. A conviction *Page 15 
based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541
citing Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211.
 {¶ 53} The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v.DeHass (1967), 10 Ohio St.2d 230. On review, the appellate court must determine, after viewing the evidence in a light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v.Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236.
 {¶ 54} Here, the jury's verdict turned exclusively on whether or not the individual jurors gave credence to Appellant's uncontradicted testimony. In other words, if the jury believed Appellant's version of the events of November 3, 2006, they could not have concluded that he had the requisite mens rea to aid and abet the commission of aggravated murder. On the other hand, if the jury did not believe his story, the evidence demonstrates that Appellant had sufficient time and opportunity to foresee the several steps required to murder Dill, and that he undertook those steps for the purpose of murdering Dill. *Page 16 
 {¶ 55} Appellant admitted at trial that he lied to the police more than once during their investigation, and that the testimony he provided at trial was different than his already twice-amended story to the police. Of equal significance, Appellant could not account for the additional forty minutes that passed between leaving Life Skills and finding Dill on Glenwood Avenue. He testified that he never objected to what was being planned or refused to take part in it. Appellant's only explanation for his complete acquiescence to the murder plan was fear and confusion, however, he did not testify that any of the men threatened him or forced him to take part in the murder.
 {¶ 56} As stated previously, the jury may have inferred the requisite mens rea from the fact that Appellant was in the car for over an hour, and never made any effort to prevent the murder or escape the situation, even when the opportunity for escape presented itself when Crockett, Tillis, and Lewis exited the car on Glenwood Avenue.
 {¶ 57} The credibility of the witnesses is primarily for the trier of fact to determine. See DeHass, supra. Because there was sufficient evidence before the trial court to allow the jury to reject Appellant's testimony and conclude that he had the requisite mens rea to commit the crime charge, Appellant's third assignment of error is overruled.
 {¶ 58} The judgment of the trial court is affirmed.
Vukovich, P.J., concurs.
DeGenaro, J., concurs. *Page 1